IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

DAVID HILL DEVELOPMENT, LLC, an
Oregon limited liability company,

                Plaintiff,

      v.

CITY OF FOREST GROVE, an Oregon
municipal corporation, STEVE A. WOOD,
individually and in his capacity as Project
Engineer for the City of Forest Grove,
ROBERT A. FOSTER, individually and in
his official capacity as Engineering Director
and Public Works Director for the City of
Forest Grove,

                Defendants.

Civ. No. 08-266-AC

OPINION AND
ORDER

_____

ACOSTA, Magistrate Judge:

OPINION AND ORDER           1           {KPR}

*Introduction*

This motion for partial summary judgment on Plaintiff's federal inverse condemnation claim comes before the court in response to opinions recently issued by the Oregon Supreme Court and Ninth Circuit Court of Appeals. Defendants argue that these opinions bear directly on Plaintiff's federal inverse condemnation claim and that, under this recently issued precedent, this claim fails as a matter of law. This court ruled previously on summary judgment in this matter but will revisit certain of its rulings, in light of these recent opinions.

In *West Linn Corporate Park, L.L.C. v. City of West Linn*, 349 Or. 58, 240 P.3d 29 (2010), the Oregon Supreme Court addressed two certified questions from the Ninth Circuit Court of Appeals regarding inverse condemnation claims arising from conditions on development. The Ninth Circuit has since issued an opinion in the same case, which substantially adopts the analysis of the Oregon Supreme Court. Based on the recent rulings, Defendants move the court to reconsider two of its prior rulings.[1]

*Legal Standard*

I.   Motion for Reconsideration

Defendants have filed a second motion for summary judgment premised on an alleged

---

[1] At oral argument on this motion, Defendants also argued that Plaintiff's First Amendment retaliation claim should be dismissed in light of the Ninth Circuit's most recent opinion, issued just days earlier, and sought leave to brief the issue. The court construes this request as a request for reconsideration of its prior ruling.
  The court recognizes that the parties have not had an opportunity to brief or otherwise litigate this issue and, for that reason, does not conclusively rule with respect to Defendants' request. It advises Defendants, however, that in its view the opinion in question does not appear to announce an intervening change in controlling law, and rather represents only an application of existing law to a particular set of facts. That said, if Defendants wish to proceed on this theory the court will set a briefing schedule and rule on it in the normal course.

OPINION AND ORDER                      2                      {KPR}

intervening change in the governing law. The court construes this as motion to reconsider under Federal Rule of Civil Procedure ("Rule") 60(b). *See American Ironworks & Erectors Inc. v. North Am. Constr. Corp.*, 248 F.3d 892, 898-899 (9th Cir. 2001) ("a 'motion for reconsideration' is treated as a motion to alter or amend judgment under Federal Rule of Civil Procedure Rule 59(e) if it is filed within ten days of entry of judgment. Otherwise, it is treated as a Rule 60(b) motion for relief from a judgment or order." (internal citations omitted)). Under Rule 60(b), "[r]econsideration is appropriate if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *School Dist. No. 1J v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993). Such a motion may not be used to "raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation." *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 880 (9th Cir. 2009).

*Discussion*

This discussion concerns two recent decisions: one by the Oregon Supreme Court, *West Linn Corporate Park, L.L.C. v. City of West Linn*, 349 Or. 58, 240 P.3d 29 (2010) ("the Oregon decision"); and the other by the Ninth Circuit Court of Appeals, *West Linn Corporate Park L.L.C. v. City of West Linn*, No. 05-36061 (9th Cir. Apr. 18, 2001) ("the appellate decision"). These decisions issued in response to the Ninth Circuit's request for guidance from the Oregon Supreme Court. In 2008, the Ninth Circuit certified three questions of Oregon law to the Oregon Supreme Court in *West Linn Corporate Park L.L.C. v. City of West Linn*, 534 F.3d 1091, 1005 (9th Cir. 2008), two of which are relevant to the present discussion. In particular, the Ninth Circuit sought guidance as to the following:

OPINION AND ORDER 3 {KPR}

>   (1) Must a landowner alleging that a condition of development amounts to an exaction or physical taking exhaust available local remedies before bringing his claim of inverse condemnation in an Oregon state court?
>
>   (2) Can a condition of development that requires a landowner to improve off-site public property in which the landowner has no property interest constitute an exaction?

*Id.* at 1105. The Oregon decision answered these questions yes and no, respectively, the effect of which answers on this case will be described in more detail below. The appellate decision, which issued earlier this year, implicitly adopted the conclusions set forth in the Oregon decision. Defendants in the present matter, *David Hill Development, LLC v. City of Forest Grove*, Civ. No. 08-266-AC, seek reconsideration of certain of this court's prior decisions on summary judgment to assess the impact of these recent decisions. The court will address the ripeness and exactions questions in turn.

I.  Ripeness

In addressing the ripeness of federal inverse condemnation claims, the Oregon decision referenced the holding of the United States Supreme Court in *Williamson County Regional Planning Comm'n v. Hamilton Bank*, 473 U.S. 172 (1985), which describes a two-pronged ripeness analysis. Under the first prong, a court must determine whether a final decision has been reached on the administrative level, "to determine with certainty the permitted uses of the plaintiff's property." *West Linn*, 349 Or. at 67 (citing *Williamson*, at 193). Under the second prong, the court must determine whether the plaintiff had "obtained a decision from the state court denying it just compensation." *Id.* In initially evaluating the federal inverse condemnation claim at issue in *West Linn*, the Ninth Circuit found Oregon law "unsettled with respect to whether pursuit of administrative remedies is a prerequisite to an inverse condemnation action premised on a taking

OPINION AND ORDER                                    4                                    {KPR}

under *Dolan* and *Nollan*." *Id.* at 68 (characterizing the Ninth Circuit certification order, *West Linn Corporate Park L.L.C. v. City of West Linn*, 534 F.3d 1091 (2008)).

The Oregon Supreme Court addressed this question as a matter of state law, holding:

> Assuming that Oregon law permits an inverse condemnation action premised on allegations that a condition of development requires a landowner to construct off-site improvements at a cost not roughly proportional to the impacts of development, Oregon law requires the landowner to pursue available local administrative remedies, but not to appeal to LUBA, as a prerequisite to bringing that claim in state court.

*Id.* at 76. In the present case, the court must determine whether this holding affects its prior ripeness ruling as an intervening change in controlling law.

Defendants previously premised their ripeness argument, with regard to the federal inverse condemnation claim, on Plaintiff's alleged failure to fully litigate its state inverse condemnation claim prior to asserting its federal claim. This position was reiterated by Defendants' counsel at oral argument, withdrawing Defendants' exhaustion argument and stating that Defendants' position "on inverse condemnation is that the [c]ourt has to analyze the state constitutional claim first . . . before you get to the federal." (Morasch Declaration, Exhibit F at 2.) Although Defendants cited *Williamson* in their original reply brief, they did so in support of the general proposition that a plaintiff must first pursue and be denied compensation on the state law claim, and not for a specific failure to pursue administrative remedies.

In its disposition, the court ruled against Defendants on the issue of ripeness:

> As Defendants offer no intermediate state administrative procedures that should have been pursued by Plaintiff, outside of litigation in state court – which Plaintiff initiated – the court agrees that Plaintiff's federal claim becomes ripe should it fail under the requirements of the Oregon Constitution.

(Findings and Recommendation, February 23, 2010, Docket No. 73 at 19.) The court declines to

OPINION AND ORDER 5 {KPR}

reconsider this ruling, for several reasons.

There has been no intervening substantive change in the law that is relevant to the court's prior determination. Under Oregon law, the requirement that a property owner pursue local administrative remedies when challenging a governmental deprivation of property is not a new one. In *Fifth Ave. Corp. v. Washington County*, 282 Or. 591, 614-624, 581 P.2d 50 (1978), the Oregon Supreme Court discussed the need to exhaust administrative remedies where a landowner had alleged that the county's zoning plan was arbitrary, capricious, unreasonable, and thus unconstitutional as applied to its property. The court later described its decision in *Fifth Ave. Corp.* as holding that, in showing that he is precluded from all private use, a landowner "may not simply rest on the apparent preclusive effect of the plan or other regulation when administrative procedures exist by which he might obtain at least temporary or partial relief . . . ." *Suess Builders Co. v. Beaverton*, 294 Or. 254, 261, 656 P.2d 306 (1982) (citing *Fifth Ave. Corp.*, at 614-621)). As the Oregon Supreme Court noted in *West Linn*, it had subsequently "extended the requirement of *Fifth Avenue* to a plaintiff's claim for inverse condemnation in *Suess Builders*." *West Linn*, 349 Or. at 74. In general, the need to exhaust administrative remedies prior to seeking judicial relief by way of an inverse condemnation claim was established under Oregon law prior to the Oregon Supreme Court's recent ruling in *West Linn*.

Furthermore, the Oregon Supreme Court decided, in *Boise Cascade Corp. v. Board of Forestry*, 325 Or. 185, 935 P.2d 411 (1997), that appeal to LUBA was not a necessary prerequisite to filing an action for inverse condemnation. The court reasoned that "the issue presented – whether a taking had occurred – was a constitutional question that fell within an area traditionally adjudicated by courts." *Id.* at 196. The Oregon Supreme Court explained this decision in *West Linn*: "LUBA

reviews the decisions of local government, but it does not decide facts and cannot make policy decisions for local governments. . . . Requiring appeal to LUBA would not serve the same purposes as does requiring the pursuit of local government remedies." *West Linn*, 349 Or. 75-76. Taking note of these decisions, the Oregon decision explicitly extended the requirement that administrative remedies be exhausted prior to bringing inverse condemnation claims arising from conditions on development requiring off-site improvements. The court also held that appeal to LUBA was not required in order to exhaust the remedies in question.

In the court's view, this ruling does not constitute an intervening change in substantive law. It was already established under both federal and state precedent that a party seeking to assert an inverse condemnation claim must first exhaust local administrative remedies. *See Williamson*, at 186 ("As the Court has made clear in several recent decisions, a claim that the application of government regulations effects a taking of a property interest is not ripe until the government has reached a final decision regarding the application of the regulations to the property at issue."); *see L.A. Dev. v. City of Sherwood*, 159 Or. App. 125, 129, 977 P.2d 392 (1999) ("The Oregon Supreme Court held in those cases that, where administrative procedures exist for amending zoning plans, those procedures for seeking relief must be pursued rather than seeking relief from a court of law." (citing *Fifth Avenue* and *Sues Builders*)). To the extent that the Oregon Supreme Court made explicit the administrative exhaustion requirement where an inverse condemnation claim is based on a condition of development, i.e., a claim premised on *Nollan* and *Dolan*, rather than some other species of taking, such extension did not change the law in a manner material to the question before this court, now or at the time previously decided.

Although Defendants did challenge the ripeness of Plaintiff's federal inverse condemnation

claim in the original summary judgment motion, they did so only on the ground that Plaintiff's state inverse condemnation claim must be analyzed by the court prior to analysis of the federal inverse condemnation claim. Further, Defendants explicitly conceded their exhaustion argument at oral argument on the original motion for summary judgment. Defendants argued, at oral argument on the present motion, that their concession on exhaustion was related to the section 1983 claim. The record evidence is clear, however, that the statement was made with respect to the claims for inverse condemnation and Defendants have presented no evidence to the contrary. For these reasons, the court will not reconsider its prior ruling on ripeness.

## II. Entitlement to Compensation

In the Oregon decision, the Oregon Supreme Court also addressed the question of whether a plaintiff may state a claim for inverse condemnation under the Oregon Constitution where the city conditions development on the "construct[ion] of off-site improvements at a cost that is not 'roughly proportional' to the impact" of the proposed development. *West Linn*, 349 Or. at 77. The court addressed this issue in the context of federal takings jurisprudence, explaining that the plaintiff had couched the takings claim as one arising under the theoretical framework set forth in *Nollan v. California Coastal Comm'n*, 483 U.S. 825 (1978), and *Dolan v. City of Tigard*, 512 U.S. 374 (1994). After a survey of *Nollan/Dolan* and subsequent Supreme Court rulings, the Oregon Supreme Court concluded:

> In the absence of a Supreme Court ruling to the contrary, we conclude that a government's requirement that a property owner undertake a monetary obligation that is not roughly proportional to the impacts of its development does not constitute an unconstitutional condition under *Nollan/Dolan* or a taking under the Fifth Amendment, nor does it require payment of just compensation. We also conclude that a requirement that a property owner construct off-site improvements is the functional equivalent of the imposition of a monetary obligation.

*West Linn*, 349 Or. at 86-87.

The court agrees with Plaintiff that, with respect to federal takings claims, the Oregon Supreme Court's analysis of the relevant federal case law is dicta and is not binding on this court. That said, in the appellate decision the Ninth Circuit similarly distinguished *West Linn* from *Nollan* and *Dolan*, writing:

> Here, the conditions of development called for WLCP to construct several off-site public improvements with its personal property (money, piping, sand and gravel, etc.), but they did not require WLCP to dedicate any interest in its own real property. The Supreme Court has not extended *Nollan* and *Dolan* beyond situations in which the government requires a dedication of private real property. We decline to do so here.

*West Linn Corporate Park*, No. 05-36061 at 4-5 (citing *Lingle v. Chevron USA, Inc.*, 844 U.S. 528, 547 (2005)). The Ninth Circuit also pointed out, in a footnote, that such distinction would not necessarily preclude a regulatory takings claim under *Penn Central Transportation Co. v. New York City*, 438 U.S. 104 (1978). *Id.* at 5 n.3.

This is not, however, an intervening change in substantive law that would merit reconsideration by this court. This court ruled, in conjunction with Defendants' first motion for summary judgment, that Defendants had failed to meet their burden to defeat Plaintiff's federal inverse condemnation claim. In particular, Defendants opposed Plaintiff's federal inverse condemnation claim on the ground that the conditions in question were generally applicable legislative determinations and not exactions specific to Plaintiff's development. The court held that Defendants had neither established that the claimed exactions were legislative in nature, nor that, if they were exactions, that they were roughly proportional. As there has been no intervening change in controlling law and Defendants merely present an argument not previously raised, the court

declines to reconsider its ruling on this point.

*Conclusion*

For the reasons stated, Defendants' Motion for Partial Summary Judgment (#92) is DENIED.

IT IS SO ORDERED.

DATED this 1st day of June, 2011.

JOHN V. ACOSTA
United States Magistrate Judge