IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

DAVID HILL DEVELOPMENT, LLC, an
Oregon limited liability company,

                Plaintiff,

     v.

CITY OF FOREST GROVE, an Oregon
municipal corporation, STEVE A. WOOD,
individually and in his capacity as Project
Engineer for the City of Forest Grove,
ROBERT A. FOSTER, individually and in
his official capacity as Engineering Director
and Public Works Director for the City of
Forest Grove,

                Defendants.

03:08-cv-266-AC

OPINION AND ORDER

_____

ACOSTA, Magistrate Judge:


1 – OPINION AND ORDER

*Pending Motion*

Pending before the court in the above entitled matter is Defendants' FRCP 59 and Alternative FRCP 60 Motion for New Trial Based on Evidence of Ex Parte Juror Contact. The City of Forest Grove, Steve A. Wood and Robert A. Foster (collectively "City") moved, initially, for a hearing to determine whether the outcome of the trial was prejudiced by improper juror contact based on alleged *ex parte* contact by a representative of David Hill Development, LLC ("David Hill") with a juror. (Defs.' FRCP 59 Mem. at 1-2.) Because there was a reasonable possibility of prejudice based upon the City's allegations of *ex parte* contact, the court granted the City's request for an evidentiary hearing to establish actual prejudice. *See, e.g., United States v. Rosenthal*, 454 F.3d 943, 949 (9th Cir. 2006) ("Where *ex parte* communication is involved, the district court, upon finding a reasonable possibility of prejudice, must hold a fair hearing. . . . At the hearing, the defendant generally must demonstrate 'actual prejudice,' without which a new trial is not warranted." (citation omitted)); *Dyer v. Calderon*, 151 F.3d 970, 974 (9th Cir. 1998) (*en banc*) ("A court confronted with a colorable claim of juror bias must undertake an investigation of the relevant facts and circumstances.").

David Hill opposes the City's request for a new trial, arguing the City's motion is untimely and, as such, the City waived its right to object to contact between a juror and McDonald. Alternatively, David Hill insists there was no improper *ex parte* juror contact and, in any event, the City is unable to show actual prejudice.

On February 23, 2011, the court held an evidentiary hearing to determine whether a new trial was necessary because of *ex parte* jury conduct that prejudiced the jury's verdict. For the reasons that follow, the court has determined there was no improper *ex parte* juror contact, and no prejudice

2 – OPINION AND ORDER

to the jury's deliberations or the decision in this case. Accordingly, Defendants' FRCP 59 and Alternative FRCP 60 Motion for New Trial Based on Evidence of Ex Parte Juror Contact is denied.[1]

*Statement of Facts*

On Thursday, September 29, 2011, the matter of *David Hill Development, LLC v. City of Forest Grove, et al.,* No. 3:08-cv-00266-AC (D. Or.), was submitted to the jury for deliberations. Later that evening, Connie McKelvey, a law partner at the firm Hart Wagner LLP, went to celebrate her son's birthday with her family at a local steakhouse. (Connie McKelvey Decl. ¶ 2, Nov. 15, 2011.) McKelvey testified in her declaration that she was seated at a table near the center of the room while she waited for her family to arrive. (McKelvey Decl. ¶ 2.) While waiting for her family, McKelvey witnessed a celebration by a large group at a table nearby. (McKelvey Decl. ¶ 2.) Several members of the group spoke in voices that were clearly audible and, in fact, difficult for McKelvey to ignore. (McKelvey Decl. ¶ 2.)

Relevant here, McKelvey overheard a discussion regarding a court case, and multiple references to two of her colleagues, Richard Kuhn and Daniel Lerner.[2] (McKelvey Decl. ¶ 3.) She was aware those colleagues were involved in a long trial, but had no specific knowledge of this case. (McKelvey Decl. ¶ 3.) Nevertheless, it became apparent to McKelvey that David Hill's counsel or

---

[1] The City also argues "[t]he court may also relieve a party from a final judgment based on newly discovered evidence pursuant to FRCP 60(b)(2)." (Def.'s Mem. FRCP 59 and Alternative FRCP 60 Based on Ex Parte Juror Contact 3.) The City, however, provides no additional argument in support of this alternative basis for granting a new trial. Because the court has considered the City's request for a new trial under Rule 59(a) and determined no new trial is warranted, it need not consider whether to grant the City's request for relief from final judgment in this case pursuant to Rule 60(b)(2). *See* FED. R. CIV. P. 60(b)(2).

[2] Richard Kuhn is a partner at Hart Wagner, LLP, and is counsel of record for all defendants in this case. Daniel Lerner is an associate attorney at Hart Wagner LLP, and has appeared on behalf of defendants at different points during these proceedings.

3 – OPINION AND ORDER

staff from the trial in this matter were sitting at the table and discussing the proceedings. (McKelvey Decl. ¶ 3.) Once McKelvey's family arrived, she tried to ignore the conversation at the nearby table, but the group was still audible. (McKelvey Decl. ¶ 4.)

McKelvey states in her declaration that she overheard "several statements that caused [her] deep concern." (McKelvey Decl. ¶ 4.) In fact, McKelvey overheard discussions "related to interactions that [David Hill's] counsel had with jurors." (McKelvey Decl. ¶ 4.) Specifically, McKelvey could hear people at the nearby table commenting on how pleased they were with the way the case was going, in part, because of the jurors "who talk to them." (McKelvey Decl. ¶ 5.) Someone even stated, "at least we have the Australian juror who talks to us." (McKelvey Decl. ¶ 5.) Apparently, the Australian juror said, "It's almost done." (McKelvey Decl. ¶ 5.) McKelvey testified that someone from the group commented they knew they were winning the case, they just did not know how much the verdict would be. (McKelvey Decl. ¶ 5.)

After someone from the group made a comment about talking to a juror and then laughed, McKelvey's son turned to her and asked, "Mom, can they do that?" McKelvey responded that lawyers are not supposed to communicate with jurors during their trial. (McKelvey Decl. ¶ 6.) At the time of these events, McKelvey was unaware the jury was deliberating. (McKelvey Decl. ¶ 7.) She was also unaware of individual jurors, including whether there was an "Australian" member on the panel.

The following day, McKelvey sent an email to Kuhn about the conversation she overheard, (McKelvey Decl. ¶ 8.) She was not able, however, to discuss the matter with Kuhn until two days later, after a unanimous verdict was rendered for David Hill. (McKelvey Decl. ¶ 8.)

Tim McDonald, the managing member of David Hill, who was present through the entire trial in this matter, filed an affidavit to explain the allegations set forth in the McKelvey declaration. McDonald testified that about a week before the trial ended one of the jurors leaving the jury room for the lunch break commented in McDonald's direction that the trial was almost over. McDonald acknowledged the comment, and the juror continued toward the elevator with nothing more being said. (Tim McDonald Aff. ¶ 5, Dec. 20, 2011; Bradley Andersen Decl. ¶ 5, Dec. 20, 2011.) The trial concluded the following week, with the parties giving their closing arguments on Thursday, September 29, 2011. The next morning, on September 30, 2011, the jury began their deliberations and a verdict was reached at around 5:00 p.m. that same day.

On the evening following closing arguments, McDonald and his trial team went to dinner at a local restaurant. Unknown to McDonald or his lawyers McKelvey, was sitting nearby and overheard McDonald and/or his legal team talk about how pleased they were with the way the trial was going. As set forth above, the following morning, at 7:19 a.m., McKelvey wrote Kuhn an email entitled "Your case" in which she described her concerns about what she had overheard.

On that same morning, the jury began to deliberate at 8:30 a.m. At around noon, the court sent each of the attorneys an email indicating the jury had a question, and requesting counsel appear telephonically. (Andersen Decl. ¶ 15, Ex. C.) Kuhn responded to the court's email and appeared by telephone, but he did not raise any concerns about juror misconduct. At around 4:30 p.m., the court announced the jury had reached a verdict. At approximately 5:00 p.m., the jury announced its verdict in favor of David Hall, and awarded $6,539,176 in damages. Upon a request by Kuhn, the court polled the jury, following which, the court asked Kuhn whether he had anything further, to which he replied "no." (Andersen Decl. ¶ 20, Ex. C.) The verdict was then accepted by the court.

A few days later, the City issued a press release in which it criticized the jury for "improperly ignoring the court's instruction with its verdict" and indicated it was "shocked" by the result. (Andersen Decl. ¶19, Ex. A.)

*Legal Standard*

The motion is made pursuant to Rule 59(a)(1) of the Federal Rules of Civil Procedure, which states, in relevant part, "[t]he court may, on motion, grant a new trial on all or some of the issues -- and to any party -- as follows:  (A) after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." FED.R.CIV.P. 59(a)(1).  Even if the verdict is supported by substantial evidence, the court may grant a motion for a new trial under Rule 59 "if the verdict is contrary to the clear weight of the evidence, is based on evidence which is false, or to prevent a miscarriage of justice." *Silver Sage Partners v. City of Desert Hot Springs*, 251 F.3d 814, 819 (9th Cir. 2001); *see also Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007) ( "Historically recognized grounds [for a new trial under Rule 59] include, but are not limited to, claims that the verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair to the moving party.") (internal quotations and citation omitted).

*Discussion*

David Hill opposes the request for a new trial, arguing the City's motion is untimely and, as such, it waived its right to object to contact between a juror and McDonald.  Alternatively, David Hill contends there was no improper *ex parte* juror contact and, in any event, the City is unable to establish actual prejudice.  Before addressing the merits of the allegations of improper *ex parte*

contact, the court must resolve the threshold question of whether the City's Rule 59(a) motion is timely.

I.    Timeliness of Rule 59(a) Motion

David Hill points out that despite receiving McKelvey's email on the morning the jury was deliberating, neither Kuhn nor any member of his firm chose to bring the alleged misconduct to the court's attention until 45 days after the verdict had been received and the jury was released. David Hill contends the City waived its right to impeach the verdict because the City is not permitted to "await favorable outcome and then, after a verdict has been returned, raise an issue that they could have raised earlier." (Pl.'s Resp. 5-6 (citing *Woods v. Burlington N. R.R.*, 768 F.2d 1287, 1292 (11th Cir. 1985), and *Moore's Federal Practice*, Section 59.13[2][e][iii][B] (2011) (the "failure to make a timely objection to contact between a juror and an outside party may constitute a waiver of the objection").)

The City responds that McKelvey emailed Kuhn early in the morning on September 30, 2011, and she was out of the office the rest of the day. (McKelvey ¶ 8.) As such, Kuhn did not have an opportunity to consult McKelvey or discuss the substance of what she overheard. To preserve her recollection, Kuhn arranged for independent counsel to interview McKelvey prior to consulting her. (Defs.' Reply 3.) After McKelvey had an opportunity to explain what transpired, the City determined the public comments by David Hill's representatives were sufficient to support the filing of the present motion.

Rule 59(b) of the Federal Rules of Civil Procedure states: "A motion for a new trial must be filed no later than 28 days after the entry of judgment." Judgment was entered for David Hill on

October 17, 2011 (doc. #190).[3]  The City filed its motion for a new trial based upon *ex parte* juror

contact on November 15, 2011.  There is no dispute the City filed its motion within the time period

provided by the Federal Rules of Civil Procedure.  Additionally, due process may require this court

to conduct an inquiry into potential bias or prejudice of a juror, regardless of when a motion is filed.

*See, e.g., U.S. v. Brande*, 329 F.3d 1173, 1177-1178 (9th Cir. 2003) (defendants were entitled to

evidentiary hearing despite not raising the issue until five months after learning of the contact and

not filing a proper motion).  The City filed its motion within the time mandated by Rule 59(b) and,

thus, it has not waived its right to challenge any potential bias or prejudice of a juror based upon the

alleged *ex parte* contacts.

II.    Improper *Ex Parte* Contact with a Juror

The Ninth Circuit's "juror-misconduct precedents distinguish between introduction of

extraneous evidence to the jury, and *ex parte* contacts with a juror that do not include the imparting

of any information that might bear on the case." *Rosenthal*, 454 F.3d at 949 (citation and quotations

omitted); *see also Sea Hawk Seafoods, Inc. v. Alyeska Pipeline*, 206 F.3d 900, 906 (9th Cir. 2000)

("Our precedents are mostly in criminal cases, but we have applied the same rules in civil cases.").

"Extraneous-evidence cases involve not only the introduction of evidence *per se* but the submission

of extraneous information (*e.g.*, a file or dictionary) to the jury.  *Ex parte* contacts, by contrast,

generally do not pertain to any fact in controversy or any law applicable to the case." *Id.* (citations

omitted).  In an *ex parte* contact case, the court must hold a fair hearing if it finds a reasonable

---

[3]The Judgment was signed on October 17, 2011, but was not entered on the civil docket
until October 18, 2011.

possibility of prejudice. Unless the *ex parte* contact is inherently coercive, the movant is not entitled to a new trial without demonstrating actual prejudice. *Id.*

There are no allegations here that information bearing on the case was imparted to the jurors by David Hill. Rather, the issue raised is one of *ex parte* contact, as all of the City's allegations focus on whether a representative from David Hill had contact with a juror(s) outside of the courtroom proceedings. The City's description of that contact reveals nothing inherently coercive about its content. Accordingly, it is the City's burden to establish there was improper contact between David Hill's representative and a juror(s), and that the City was *actually* prejudiced by these interactions.

On February 23, 2012, the court held an evidentiary hearing to determine whether improper ex parte juror contact had occurred and whether there was actual prejudice to the City such that a new trial is warranted. The court began the day by interviewing Nancy Simon, the "Australian juror," *in camera*, in the presence of a court reporter. The *in camera* interview revealed little basis for a reasonable possibility of prejudice but, in an abundance of caution, the court held the scheduled evidentiary hearing. Thus, the court determined it was appropriate for Simon to be sworn in as a witness and testify in court, first by answering questions posed by the court, with follow-up conducted by the attorneys.

In court, Simon testified consistent with her *in camera* interview. Specifically, she provided, in relevant part:

BY THE COURT:

> Q. All right. So I'm going to ask you some questions, and please answer them fully to the best of your recollection. We're here today for a motion, the basis of which is the possible or alleged contact between you and Mr. McDonald, who is the

9 – OPINION AND ORDER

representative of plaintiff in this case. And the first thing I will ask you is do you remember at any time during the trial having any discussions with Mr. McDonald about anything at all?

A. I don't remember specifically him. I just said good morning, exchanged just real basic with anybody I came in contact with.

Q. Do you have a recollection of at any time during the trial when you saw Mr. McDonald you may have made a comment to him that the trial or the case was almost over is this?

A. I don't recall that.

Q. Do you recall at any time that you might have encountered Mr. McDonald during the trial that he initiated any conversation with you?

A. No, I don't recall that.

Q. Do you recall that Mr. Andersen, one of the lawyers for the plaintiff, might have initiated any conversation with you?

A. No, I don't recall anything like that.

Q. Do you remember Mr. Andersen?

A. Of course.

Q. You know he's here today in court?

A. Yes.

Q. Or Mr. Morasch, having initiated any contact with you, did anything like that ever occur?

A. No.

Q. And just to be clear for the record, the contact, whether in the courthouse or on the street or at any time, in any way during the pendency of the trial in this case?

A. I don't remember. I don't recall anything that would be remarkable or outside of the realm of good morning, hello.

Q. All right. To the extent you might have exchanged greetings or pleasantries during the course of trial when encountering Mr. McDonald or Mr. Andersen or Mr. Morasch in the hallways or in the courthouse, did any of those contacts have any influence on your decision in this case?

A. No.

Q. One way or the other?

A. No.

Q. Did you have any contact of any kind, other than the greetings or pleasantries you've already described, with any of the lawyers for the defendants?

A. No.

Q. Did they attempted to initiate contact with you in any way, other than a greeting or a pleasantry, during the entirety of the trial?

A. No.

Q. Or any of the representatives of the defendant attempt to contact you in any way?

A. No.

(Draft Tr. Second Excerpt Mot. Hrg. 3:12-5:16, Feb. 23, 2012.)

BY MR. KUHN:

Q. Ms. Simon, did any of the parties or witnesses or any of the other people who were gathered out here in the hallway during the pendency of the trial ever approach you at any time?

A. No. I don't recall anything like that.

. . . .

Q. And you never saw any other jurors approached or contacted by any of the parties, witnesses, consultants, anyone like that while you were present?

A. Nothing that stands out to me that I overheard or --

11 – OPINION AND ORDER

Q. Did you ride on the elevators with any of the parties or witnesses or anything like that in connection with the trial?

A. Sure. I think I was in the elevator with you one time, yes.

Q. Did we ever discuss anything about the case?

A. No.

Q. Did you ever discuss anything about the case with anyone else?

A. No.

(Draft Tr. Second Excerpt Mot. Hrg. 7:7-12, 8:8-21.)

Following Simon's testimony the court permitted Kuhn, on behalf of the City, to call additional witnesses to elicit testimony in support of his request for a new trial based upon *ex parte* juror contact. Kuhn called McKelvey, who testified in accordance with her declaration filed in this matter, as detailed above.

Kuhn then questioned Randi Higbie, a paralegal for Schwabe Williamson & Wyatt, PC ("Schwabe"), the law firm representing David Hill. Higbie explained she was part of the David Hill trial team; she attended opening and closing arguments; and she was present at the September 29th dinner that is the genesis for this controversy. With respect to her attendance at trial, Higbie was assigned the task of observing the jurors during opening statements and closing arguments to offer her insights on the jurors' reactions during counsels' presentations. With respect to the dinner at issue, Higbie testified that any discussions about jurors at the September 29th dinner was in the context of what individual trial team members thought about what the jurors were thinking. Higbie was aware of Simon's comment along the lines of "it is almost over" and one other comment made by a juror to Laurie Kotasek, a paralegal employed by Schwabe and assigned to the trial team.

Higbie explained that another female juror remarked to Kotasek during an elevator ride that Andersen was going to owe Kotasek several lunches for mistakenly referring to her by a name other than Laurie. This comment by the female juror was in reference to remarks made by Andersen during his opening statement that he was likely to call Laurie the wrong name throughout the trial and he would need to buy Kotasek lunch each time he made such a mistake. Higbie testified she knew of no other contact between jurors and any representative from David Hill or David Hill's trial team.

Kotasek was the next witness to testify; she attended every day of the trial and the September 29th dinner. One of her assignments was to observe juror responses to the evidence presented throughout the trial. Kotasek testified the juror discussion at the September 29th dinner was premised on Kotasek's impressions of the jurors during trial. In addition, Kotasek explained the circumstances of the comment made to her by the second female juror; namely, the juror referenced the number of lunches Andersen must owe Kotasek by that point in time. Kotasek testified her only reply was simply along the lines of "yeah" or "he sure does." Kotasek was also aware of the "it is almost over" comment by Simon. Kotasek testified she knew of no other contact between jurors and any representative from David Hill or David Hill's trial team.

Kuhn next called McDonald to testify directly about his contact with Simon. McDonald explained the contact occurred approximately one week before the trial ended. While McDonald could not recall the exact words of the exchange, he testified Simon remarked that McDonald "looked tired" to which he responded "yeah" or "we are all tired." Simon then followed with "it is almost over" and McDonald replied simply "yeah." McDonald testified Simon initiated the conversation and Andersen overheard the exchange. McDonald offered that he tried to avoid the

13 – OPINION AND ORDER

jurors and he did not recall any other contact with jurors beyond a salutation in the morning during which no other information was exchanged. McDonald was present at the September 29th dinner at which the jurors were discussed. According to McDonald, the dinner conversation was focused on the trial team's insights regarding what the jurors thought and/or how the jurors perceived the case. McDonald testified the dinner participants relied upon their own observations of juror body language, not direct communications, to opine about what the jurors thought.

Kelly Walsh, an attorney for Schwabe assigned to the trial team, testified next. Walsh was present during the trial on some days and attended the September 29th dinner. Walsh echoed the remarks of the other testifying members of the trial team who attended the dinner. Specifically, she offered that everyone was trying to "read the tea leaves" regarding what the jurors were thinking. Walsh testified she was aware of Simon's comments to McDonald, but she did not believe the remarks reached a level such that a report to the court was necessary.

Following Walsh's testimony, the court took a short recess. Immediately upon resuming the evidentiary hearing, Kuhn stated:

THE COURT: Mr. Kuhn.

MR. KUHN: Thank you, Your Honor. Your Honor, I'm not going to call any other witnesses. I think from the defense point of view, we've had an opportunity to inquire of Nancy Simon and these other witnesses both that were here during trial and at the dinner. We've put on Ms. McKelvey. So I think we've done whatever we can do. I think the Court has given us the opportunity to explore these issues, and I don't have any other evidence to present.

(Draft Tr. Third Excerpt Mot. Hrg. 1:3-12.)

At that point, the court indicated there was nothing in the testimony, or any other evidence received thus far, that gave rise to concerns of inherently coercive contacts between David Hill and

the jurors or any actual prejudice to the City. Nevertheless, the court allowed William Crow, making an initial appearance on behalf of David Hill, to call Bradley Andersen to testify. Andersen was trial co-counsel and attended the September 29th dinner. Andersen informed the court of one additional contact between a juror and McDonald and Andersen. Specifically, during a lunch break, Andersen and McDonald decided to step out to the mezzanine a few floors below the courtroom. While looking for the door that led to the outside, a juror said "it's locked." Andersen testified that neither he nor McDonald responded. At the September 29th dinner, the participants discussed the jurors, offering opinions about what individual jurors, referred to by nicknames, may be thinking and their attitudes. Other than the matters testified to at the evidentiary hearing, Andersen had no knowledge of any other contacts between a David Hill representative or a trial team member with any of the jurors. Andersen's testimony concluded the evidentiary hearing.

The court finds that none of the contacts set forth in the McKelvey declaration or testified to during the evidentiary hearing by any of the witnesses were of a coercive nature. Indeed, Simon's only "contacts" with any of the parties (including party representatives and counsel) were brief and limited to an exchange of pleasantries.[4] Simon's sworn testimony on this matter was unequivocal and nothing in the record gives the court reason to doubt her credibility. In addition, the testimony of all the other witnesses called during the evidentiary hearing support the same conclusion of no inherently coercive contacts. There is no basis to allow the City to inquire of any other juror, nor has the City made such a request.

---

[4]The fact Simon was aware the trial may be drawing to a close is easily explained by this court's practice of regularly informing the jury of the anticipated time line for when the case would be ready for deliberations.

15 – OPINION AND ORDER

Based upon the evidence received during the evidentiary hearing, and all other evidence presented in this matter, the court finds there was no inherently coercive contact between any of David Hill's representatives or counsel and any juror. As such, the City must show actual prejudice to defendant. *See Rosenthal*, 454 F.3d at 949. There was nothing in Simon's testimony, either *in camera* or in court, to indicate she had reached a determination of her verdict prior the case being submitted to the jury. Indeed, the alleged comments to McDonald were so fleeting and of such and inconsequential nature that barely four months later Simon could not even recall the exchange. There can be no doubt that if Simon engaged in *ex parte* contact with the parties such that it prejudiced her decision in this case, she would recall the circumstances of those events. The City has presented no evidence of actual prejudice in this case, either in their written submissions to the court or during the evidentiary hearing. Accordingly, the City's request for a new trial based upon *ex parte* juror contacts must be denied.

### Conclusion

Based upon the foregoing, Defendants' FRCP 59 and Alternative FRCP 60 Motion for New Trial Based on Evidence of Ex Parte Juror Contact (doc. #207) is **DENIED.**

IT IS SO ORDERED

DATED this 27th day of February 2012

_____
John V. Acosta
United States Magistrate Judge

16 – OPINION AND ORDER